

FILED

FEB 1 5 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

COMSCORE, INC.,

                       **Plaintiff,**

v.                                   **Civil Action No. 2:12cv351**

INTEGRAL AD SCIENCE, INC.,

                       **Defendant.**

COMSCORE, INC.,

                       **Plaintiff,**

v.                                   **Civil Action No. 2:12cv396**

DOUBLE VERIFY INC.,

                       **Defendant.**

COMSCORE, INC.,

                       **Plaintiff,**

v.                                   **Civil Action No. 2:12cv695**

MOAT, INC.,

                       **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendants Integral Ad Science, Inc.'s ("Ad Science"),[1] Double Verify, Inc.'s ("Double Verify"), and Moat, Inc.'s ("Moat") (collectively, "Defendants") three respective Motions to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

---

[1] On February 1, 2013, the Court granted Ad Science's Motion to change the caption in this case to reflect that Ad Science had changed its name from "Ad Safe Media, Ltd." to "Integral Ad Science, Inc." on December 21, 2012. Doc. 40. As such, the Court will refer to Ad Science by its newly captioned name going forward.

Docs. 17 (2:12cv351), 27 (2:12cv396), 28 (2:12cv695).[2] On January 24, 2013, the Court convened a hearing and ruled from the bench. The Court **DENIED** Defendants' Motions and now issues this Opinion and Order setting forth the reasons for its ruling in further detail.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Patents at Issue and Procedural History

From August 22, 2000, through July 13, 2010, the United States Patent and Trademark Office (the "USPTO") issued the following U.S. Patents to inventor Trevor Blumenau: Nos. 6,108,637 (the "'637 patent"); 6,327,619 (the "'619 patent"); 6,418,470 (the "'470 patent"); 7,386,473 (the "'473 patent"); 7,613,635 (the "'635 patent"); 7,716,326 (the "'326 patent"); and 7,756,974 (the "'974 patent"). Doc. 1, ¶¶ 6-13 (Compl.).[3] According to Plaintiff comScore, Inc. ("Plaintiff" or "comScore"), Mr. Blumenau resides in Plano, Texas. Doc. 23 at 2. On September 5, 2000, the USPTO issued U.S. Patent No. 6,115,680 (the "'680 patent") to inventors Steven R. Coffey, David B. Pinsley, Karen A. Poloniewicz, Stephen J. Costello, as well as other unnamed inventors. Doc. 1, ¶ 7; see also Doc. 18, Att. 3. According to Defendants, each of these named inventors resides in New York, New York. Doc. 18 at 4. Defendants also allege that a lawyer who communicated with the inventors of the '680 patent and inappropriately failed to disclose relevant prior art to the USPTO is based in New York. Doc. 28 at 5 (2:12cv396).

Each of these patents (collectively, "patents-in-suit") pertain to the gathering of information regarding the manner in which content is transferred over the Internet, such as how webpages and advertisements are displayed, as well as how end users view and interact with such content. See Doc. 1, ¶¶ 14-15. Subsequent to their issuance, the patents-in-suit were all

---

[2] As all three cases have been consolidated for the purpose of all pretrial proceedings and as all three Motions focus on nearly identical issues of fact and law, the Court will address all three Motions together, and to the extent that any individual distinctions are relevant or necessary, the Court will make note of them as they arise.

[3] Unless otherwise stated, docket entries refer to documents filed in the lead case, 2:12cv351.

assigned to the Nielsen Company (U.S.), LLC ("Nielsen").[4]  See Doc. 18, Att. 3.  Nielsen's

principal place of business is New York, New York.  Doc. 18.  On March 25, 2011, Nielsen filed

suit against Plaintiff in the Eastern District of Virginia, alleging that Plaintiff infringed four of

the patents-in-suit.  See Nielsen Co. (US) LLC v. comScore, Inc., No. 2:11cv168 (E.D. Va.).

Ultimately, Nielsen and Plaintiff settled their suit, and, as part of that settlement, all of the

patents-in-suit were assigned to Plaintiff.  Doc. 18 at 3.

     Plaintiff subsequently filed three separate actions, alleging that each Defendant is directly

and indirectly infringing the patents-in-suit by making and selling software products and services

that gather information in a manner protected by the patents at issue.  Doc. 1 (2:12cv351,

Compl.), Doc. 1 (2:12cv396, Compl.), Doc 1 (2:12cv695, Compl.).  Specifically, Plaintiff alleges

that Ad Science's "Ad Viewability" product and service, Double Verify's "AdView, AdAssure,

and Dual Verification" products and services, and Moat's "Brand Analytics and Ad Search"

products and services all infringe the patents-in-suit.  Id.

     On September 20, 2012, Ad Science filed its Motion to Transfer Venue, along with a

Memorandum in Support and various exhibits.  Docs. 17, 18.  On October 4, 2012, Plaintiff filed

a Memorandum in Opposition, with corresponding exhibits.  Doc. 23.  Then, on October 10,

2012, Ad Science filed a Rebuttal in Support of its Motion and supporting exhibits.  Doc. 24.

Next, on October 17, 2012, Double Verify filed its Motion to Transfer Venue, along with a

Memorandum in Support and various Exhibits.  Docs. 27-29 (2:12cv396).  On November 7,

2012, Plaintiff filed its Memorandum in Opposition, Doc. 35 (2:12cv396), and on November 16,

---

[4] Before their assignment to Nielsen, each of the patents-in-suit went through a somewhat varied path of assignments, including companies such as Pacific Web, Inc. (California based, also known as Nuweb), Engage Technologies, Inc. (Massachusetts based), Netratings, LLC or Netratings, Inc. (based in New York, NY), Medix Metrix, Inc. (based in Port Washington, New York), Jupiter Media Metrix, Inc. (based in New York, NY), and various Nielsen subsidiaries.  Doc. 18, Att. 3.

2012, Double Verify filed its Rebuttal and declaration in support. Docs. 36, 37 (2:12cv396). Finally, on November 9, 2012, Moat filed its Motion to Transfer Venue, along with a Memorandum in Support and various exhibits. Docs. 28, 29 (2:12cv695).[5] Plaintiff proceeded to file its Memorandum in Opposition on November 23, 2012, Doc. 35 (2:12cv695), and on November 29, 2012, Moat filed its Reply. Doc. 37 (2:12cv695). All three cases were then assigned to this Court, and on December 20, 2012, the Court consolidated the cases for the purpose of all pretrial proceedings. Doc. 30.

**B.    The Parties**

### 1. Plaintiff comScore

Plaintiff is a corporation organized and existing under the laws of Delaware with its principal place of business and global headquarters in Reston, Virginia. Doc. 23, Att. 2. Indeed, Reston has been Plaintiff's global headquarters since its inception in 1999. Id. at ¶ 2. There, Plaintiff produces and offers for sale the following products: (1) AdEffx product suite ("AdEffx"); (2) validated Campaign Essentials ("vCE"); and (3) Digital Analytix Monetization ("DAx Monetization"), which, according to Plaintiff, compete with Defendants' alleged infringing products in the ad verification sphere.[6] Id. at ¶ 3. Plaintiff's headquarters in Reston is also the home to both employees who have knowledge of, and documents relating to, the operation, function, sales, and marketing of these products. Id. at ¶¶ 4-5, 7.

---

[5] Plaintiff also filed a Motion to Dismiss Moat's counterclaims on November 12, 2012. Doc. 28 (2:12cv695). This motion is currently under consideration by the Court.

[6] Defendants have not denied this assertion, either in their briefs or at the January 24, 2013, hearing, and in fact, at the hearing, Defendants admitted that Plaintiff is not in the same position as those non-practicing entities who take up residence in a location merely to avail themselves of that location's courts or law.

### 2. Defendant Ad Science

Ad Science is a Delaware corporation with its principal place of business in New York, New York. Doc. 18, Att. 1. The vast majority of the employees with knowledge of the development, implementation, and operation of Ad Science's alleged infringing "Ad Viewability" product are based in New York, New York. Id. at ¶ 3. The same is true for the documents related to this product. Id. Ad Science avers that it is currently running three main campaigns with its Ad Viewability software, two of which are run for New York-based customers and none of which are run for Virginia customers. Id. at ¶ 5. Additionally, Ad Science asserts that it owns no property, has no offices, and maintains no corporate or sales presence in Virginia. Id. at ¶¶ 7-13. Finally, Ad Science notes that its products are "live-in" products that require constant day-to-day maintenance and enhancement, and as such, that the absence of its employees will interfere with its business. Id. at ¶ 4.

### 3. Defendant Double Verify

Double Verify is also a Delaware corporation with its headquarters and principal place of business in New York, New York. Doc. 28, Att. 1 (2:12cv396). Prior to 2009, its principal place of business was in Israel; however, the vast majority of its operations and employees have been transferred to New York. Id. at ¶ 3. Additionally, Double Verify's alleged infringing products were researched and produced in either Israel or New York and all "[c]urrent research, design, development and testing of these products" occurs in New York. Id. at ¶¶ 4-5. Likewise, the "vast majority" of all documents related to, and employees with knowledge of, the accused products are located in New York. Id. at ¶¶ 6-8. Like Ad Science, Double Verify avers that it owns no property, has no employees, and maintains no presence of any sort in Virginia. Id. at ¶¶

10-17. Also, like Ad Science, Double Verify argues that it is a start-up company, and as such, that every one of its employees is critical to its business. Id. at ¶¶ 7.

### 4. Defendant Moat

Like the other two Defendants, Moat is a Delaware corporation with its headquarters in New York, New York. Doc. 29, Att. 1 (2:12cv695). Moat is a small, privately held start-up company with fewer than 30 employees, the vast majority of whom are located in New York. Id. at ¶ 2. As do each of the other defendants, Moat avers that its products are "live-in" products requiring constant day-to-day maintenance and enhancement. Id. at ¶ 4. Additionally, all of Moat's allegedly infringing products were researched, designed, and developed in New York, and all of Moat's employees having knowledge of, and documents relating to, these products are located in New York. Id. at ¶¶ 5-6. Again, like the other defendants, Moat does not have any property, accounts, or presence of any kind in Virginia. Id. at ¶ 9.

## II. DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[I]n considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 994 (E.D. Va. 2011) (quoting Agilent Tech., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004)). Although "[t]he decision whether to transfer an action under the statute is committed to the sound discretion of the district court . . . [t]he party seeking transfer bears the burden of proving that the circumstances of the case are strongly in favor of transfer." Heinz Kettler GMBH & Co.

v. Razor USA, LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (internal citations and quotations

omitted) (emphasis in original).

### A.    Whether the Claims Might Have Been Brought in the Southern District of New York

Title 28 United States Code, Section 1400(b) provides that "[a]ny civil action for patent

infringement may be brought in the judicial district where the defendant resides, or where the

defendant has committed acts of infringement and has a regular and established place of

business." 28 U.S.C. § 1400(b). "[A] corporation shall be deemed to reside in any judicial

district in which it is subject to personal jurisdiction at the time the action is commenced." 28

U.S.C. § 1391(c).  In this case, all Defendants are headquartered in New York City, New York,

which is within the Southern District of New York.  Further, no party disputes that the Southern

District of New York has personal jurisdiction over all Defendants.  As such, the Court **FINDS**

that all three actions could have been brought in the Southern District of New York.

### B.    Whether Transfer is Convenient to Parties and Witnesses and in the Interests of Justice

The second prong of the § 1404(a) analysis hinges on the Court's consideration of "(1)

plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access,

and (4) the interests of justice." Pragmatus AV, 769 F. Supp. 2d at 994-95 (quoting Heinz

Kettler, 750 F. Supp. 2d at 667).  The Court will address each factor infra.  As discussed above,

Defendants, as the parties seeking transfer, bear the burden of proving that the facts and

circumstances of this case weigh strongly in favor of transfer.  Heinz Kettler, 750 F. Supp. 2d at

667.

*1. Plaintiff's Choice of Forum*

"The plaintiff's choice of forum 'is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." Pragmatus AV, 769 F. Supp. 2d at 995 (quoting Heinz Kettler, 750 F. Supp. 2d at 667). Although "[t]he level of deference to a plaintiff's forum choice varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action," where "a plaintiff [ ] prove[s] a legitimate connection to the [chosen] district," this factor "strongly weigh[s] against transfer." Id. (internal citations and quotations omitted); see also VS Techs., LLC v. Twitter, Inc., No. 2:11cv43, slip op. at 12-13 (E.D. Va. June 28, 2011) (Doc. 40) (unpublished) (finding that the plaintiff's "strong presence in the current venue" provided "legitimate and significant connections to the Eastern District of Virginia," which "weigh[ed] strongly against transfer").

Here, not only is the Eastern District of Virginia Plaintiff's home forum, but also Plaintiff's "strong presence" and active development of products subject to the patents-in-suit in this District provide Plaintiff with "legitimate and significant connections" to this District sufficient to weigh strongly against transfer. See id. Indeed, since its founding in 1999, Plaintiff has maintained its principal place of business and global headquarters in Reston, Virginia, where Plaintiff currently retains over 400 full-time employees and most of its officers. Doc. 23, Att. 2, at ¶ 2; Doc. 23 at 3. But more importantly, Plaintiff produces three products in Virginia which utilize the ad verification technology that is the subject of the patents-in-suit and which compete against Defendants' allegedly infringing products. Id. at 4; Doc. 23, Att. 2, at ¶ 3. Additionally, those of Plaintiff's employees who have knowledge about the technical operation and function of

these products, as well as their sales and marketing, all work in Virginia, and all evidence or documents related to these products can be found here. Doc. 23, Att. 2, at ¶¶ 4-7.

Thus, Plaintiff is not simply a holder of the patents in question, located in Virginia, but instead is an active developer of the technology protected by those patents. And this active utilization of that technology, along with the production and sale of products based on it, all in this District, furnishes Plaintiff with a significant, legitimate connection to the Eastern District of Virginia, sufficient to justify affording Plaintiff's choice of forum substantial weight, and strongly counseling against transfer. See VS Techs., No. 2:11cv43, slip op. at 12-13 (holding that plaintiff's founder's residence in the forum for twenty-five years and his attempts to invent and prosecute the patent at issue in the forum constituted "legitimate and significant connections to the Eastern District of Virginia" that "weigh[ed] strongly against transfer"); Heinz Kettler, 750 F. Supp. 2d at 667-68 (holding that plaintiff's choice of its home forum was entitled to substantial weight where its principal place of business was located in the forum and all of its employees, "including the directors and employees with information relevant to the patent infringement suit," were located in the forum). C.f. Patent Licensing & Inv. Co., LLC v. Green Jets, Inc., No. 2:10cv421, slip op. at 7-8 (E.D. Va. June 13, 2011) (Doc. 54) (unpublished) (holding that the plaintiff's connections to the district were not sufficient to justify awarding its choice of forum substantial deference where they either were not connected at all to the patents in question or were "made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); Pragmatus AV, 769 F. Supp. 2d at 995 (finding the plaintiff's connection to this District "tenuous" because plaintiff was a "'non-practicing entity,'" who did

"not research and develop new technology but rather acquire[d] patents, license[d] the technology, and sue[d] alleged infringers").[7]

Defendants do not meaningfully dispute that Plaintiff has various legitimate contacts with this District.[8] Instead, Defendants contend that Plaintiff's own utilization of the technology protected by the patents-in-suit in this District fails to connect this District with Plaintiff's causes of action, themselves, or with the acts of infringement that occurred. See, e.g., Doc. 24 at 3-4. Thus, Defendants argue, because Plaintiff's cause of action is at best only tenuously related to

---

[7] Defendants argue that Plaintiff filed this suit not to protect hard-earned patent rights, but rather to monetize the patents it acquired from Nielsen through litigation, and therefore, that Plaintiff should be viewed as something akin to a non-practicing entity whose choice of forum should be accorded little weight. See, e.g., Doc. 24 at 2. But Plaintiff's active use and development of the technology protected by the patents it acquired from Nielsen in this District distinguishes this case from those brought by entities whose only business is the enforcement of intellectual property rights and who might have chosen to bring their suits in any district across the nation. C.f. CIVIX-DDI, LLC v. Loopnet, Inc., No. 2:12cv2, 2012 WL 3776688, at *3 (E.D. Va. Aug. 30, 2012) (affording little weight to plaintiff's choice of forum because (a) the plaintiff's only business was the enforcement of its intellectual property rights; and (b) the only connection the plaintiff alleged between the underlying claim, the defendant, and Virginia was that the defendant was an internet based company whose services were "regularly used throughout" the District). In fact, Defendants admitted at the January 24, 2013, hearing that Plaintiff could not be considered a non-practicing entity, considering its connections to the Eastern District of Virginia.

[8] Defendants do make two arguments related to the depth of Plaintiff's connections to the patents-in-suit in this District, but both arguments are unavailing. First, Defendants argue that the patents-in-suit are not about Plaintiff's products, as they were not patented by Plaintiff. See, e.g., Doc. 24, at 4-5. However, Plaintiff is the owner of the patents now, and if Plaintiff is currently producing or developing the technology protected by the patents, then it does not matter for whom the patents-in-suit were originally intended. See Heinz Kettler, 750 F. Supp. 2d at 668 ("As a proper plaintiff, there is no reason to accord [plaintiff's] home forum less deference simply because it did not have standing when the suit was originally filed. At present, this action involves a Virginia plaintiff and a California defendant, and the transfer calculus must be assessed on that basis.").

Second, Defendants argue that Plaintiff only acquired the patents-in-suit in December of 2011, and that, before that time, Plaintiff had specifically asserted during its lawsuit with Nielsen, in its answer to Nielsen's complaint, that it did not practice the claims embodied by the patents. See, e.g., Doc. 18 at 3; Doc. 24 at 4-5. Thus, Defendants appear to be arguing that Plaintiff cannot have utilized the technology protected by the patents to any significant degree if it has only been practicing the claims for, at most, six months. Nevertheless, Plaintiff's response, in an answer, that it did not believe that it had infringed the patents at issue is nothing more than a preservation of a defense at an early stage in an action, before Plaintiff had an opportunity to fully research and understand the patents that it was alleged to have infringed. It says nothing about whether Plaintiff had been, at the time, developing technology that it believed to be legitimate, but that, upon further investigation, it learned infringed upon another entity's patents. Indeed, the fact that Plaintiff eventually settled with Nielsen, and as part of that settlement, obtained all of the patents-in-suit from Nielsen, suggests that Plaintiff learned that it might have been, in fact, violating the patents in question and thus that it attempted to settle the suit in such a way as to allow it to continue utilizing and developing the technology embodied by the patents. Further, even if Plaintiff has only been developing the technology protected by the patents-in-suit since it acquired them, if, during that time, Plaintiff succeeded in utilizing the technology to produce and sell its own products based on the patents, then Plaintiff still possesses a legitimate connection to this District.

this forum, and because, in a patent infringement action, as a general rule the preferred forum is

that which is the "center of the accused activity," here, New York, New York, Plaintiff's choice

of venue should be afforded very little weight. However, such arguments misapprehend the

relationship of the cases cited to the full array of precedent in this area.

To begin, this "preferred forum" or "center of activity" rule for which Defendants

advocate only applies in those cases where the plaintiff did not file suit in its home forum. Heinz

Kettler, 750 F. Supp.2d at 668 n.8 ("But the 'preferred forum' rule does not apply in this case

because [the plaintiff] filed suit in its home forum."); see also Gen. Creation LLC v. Leapfrog

Enters., Inc., 192 F. Supp. 2d 503, 505 (W.D. Va. 2002) ("The concept of a preferred forum

located at the 'center of the accused activity' therefore only applies in those patent infringement

cases where the plaintiff files suit in a foreign forum."); Daramic, LLC v. Entek Int'l, LLC, No.

3:11CV676-FDW-DSC, 2012 WL 1569587, at *3 (W.D.N.C. May 3, 2012) ("[T]he Court gives

due consideration to the fact that the alleged infringing activity took place in Oregon but finds

that Plaintiffs' choice of their home forum strongly favors retention of this matter in this

District.").[9]

---

[9] Tellingly, almost all of the decisions cited by Defendants in support of their "center of activity" argument involved out-of-district plaintiffs, rather than plaintiffs suing in their home forum, and thus, those cases did not find that the "center of activity" rule overcame a plaintiff's choice of his home forum. See Gebr. Brasseler GMBH & Co. KG v. Abrasive Tech., Inc., No. 1:08cv1246-GBL-TCB, slip op. at 6 (E.D. Va. Mar. 27, 2009) ("GBL brought this suit in Virginia, not its home forum, and therefore its choice of venue is entitled to minimal deference."); Lycos, Inc. v. Tivo, Inc., 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) ("Virginia is not the home forum of Lycos, which has its principal place of business in Massachusetts."); Neil Bros. Ltd v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 333-34 (E.D.N.Y. 2006) (holding that "plaintiff's choice of forum will not be afforded the significant weight that this factor is typically assigned" because Plaintiff did not reside in New York, its chosen forum); Koh v. Microtek Intern., Inc., 250 F. Supp. 2d 627, 638 (E.D. Va. 2003) (holding that "close geographic proximity and minimal ties to Virginia [were] not alone sufficient to render the Eastern District of Virginia [the plaintiffs'] home forum because they [were] domiciled in Maryland"); Acterna, LLC v. Adtech, Inc., 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) ("Plaintiff's choice of forum is not entitled to substantial weight because the Eastern District of Virginia is not Plaintiff's home forum but a foreign forum."); GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) ("[T]he Eastern District of Virginia is not Plaintiff's home forum and thus Plaintiff's choice of forum will not be given dispositive deference"); Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 593 (E.D. Va. 1992) (noting that neither plaintiff was suing in its home forum). The only case cited by Defendants which involved a plaintiff suing in what amounted to its home forum and which made such a finding, Trace-Wilco, Inc. v. Symantec Corp., No. 08-80877-CIV, 2009 WL 455432, at *2-3 (S.D. Fla. Feb. 23, 2009), is an out-of-circuit decision that did

This Court's holding in <u>Heinz Kettler</u> is especially persuasive on this point. There, the defendant argued, as do Defendants here, that its case should be transferred because the proposed transferee forum was the "preferred forum" to litigate the suit, based on the general rule that "the preferred forum is that which is the center of the accused activity." <u>See Heinz Kettler</u>, 750 F. Supp. 2d at 668 n.8. The Court first held that this "'preferred forum' rule [did] not apply in [its] case because [the plaintiff] filed suit in its home forum." <u>Id.</u> The Court then explained that "the so-called 'center of activity' approach to resolution of venue issues in patent cases does not supplant the traditional change of venue analysis prescribed by § 1404(a) and the established jurisprudence applying it." <u>Id.</u> (quoting <u>Koh</u>, 250 F. Supp. 2d at 638). Rather, the Court found that "[a]t most, 'the center of gravity approach is best regarded as a shorthand reference to the convenience of witness and access to evidence components of the well-settled precepts for applying § 1404(a).'" <u>Id.</u> (quoting <u>Koh</u>, 250 F. Supp. 2d at 638). Consequently, having previously determined that the plaintiff's choice of its home forum was entitled to substantial weight, as both its principal place of business and employees with information relevant to the action were located in the forum, the Court held that "an analysis of the § 1404(a) factors and the case law applying those factors does not weigh in favor of transfer." <u>Id.</u>

In essence, <u>Heinz Kettler</u> clarifies that the "preferred forum" approach does not overrule a plaintiff's legitimate connection to a forum where such a connection exists, but instead, it serves as an efficient method of dealing with those factors that may weigh against a plaintiff's choice of forum. As such, if a plaintiff has a legitimate connection to his chosen forum, as does the Plaintiff here, then such a forum is still afforded substantial weight, regardless of whether another forum is the "center of the accused activity." <u>See id.</u>; <u>see also</u> <u>VS Techs.</u>, No. 2:11cv43,

not delve at all into the reasoning behind the "center of activity" rule. <u>Id.</u> As such, when held up against the weight of in-circuit authority to the contrary, the Court does not find this case convincing.

12

slip op. at 12-13 (finding that the plaintiff's choice of forum weighed "strongly against transfer," despite the defendant's argument that there was no connection between the alleged infringement and the Eastern District of Virginia").[10]

Moreover, Defendants' argument that Plaintiff's utilization of the technology protected by the patents-in-suit is not relevant to the transfer analysis ignores the decisions from within this District, as discussed above, that hold that a plaintiff's "strong presence" in the forum, along with ties to the production or development of products based on the patents at issue, constitute "legitimate and significant" contacts that may be used to connect a plaintiff's cause of action to his home forum. See VS Techs., No. 2:11cv43, slip op. at 12-13; Heinz Kettler, 750 F. Supp. 2d at 667-68. C.f. Pragmatus AV, 769 F. Supp. 2d at 995. And while it is certainly true that "[t]he level of deference to a plaintiff's forum choice varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action," Pragmatus AV, 769 F. Supp. 2d at 995, such contacts are not limited to those only having to do with a defendant's own alleged acts of infringement. Indeed, considering that a defendant's acts of infringement are

---

[10] Notably, almost all of those cases cited by Defendants that found that a plaintiff's choice of its home forum was not entitled to substantial deference, and which involved practicing entities, involved plaintiffs that either were the functional equivalent of foreign plaintiffs, see, e.g., Schrader-Bridgeport Int'l, Inc. v. Cont'l Auto. Sys. US, Inc., No. 6:11-cv-00014, 2012 WL 503602, at *5 (W.D. Va. Feb. 15, 2012) (holding that the connection between the suit and the forum was "rather tenuous" where the infringing activities occurred elsewhere, two of the three parties were located elsewhere, and where the only in-forum plaintiff was more "akin to a 'sales agent'" whose "location weigh[ed] relatively lightly on the transfer decision") (emphasis added), or who had almost no connection, whatsoever, to the underlying cause of action. See Pinpoint, Inc. v. Groupon, Inc., No. 11 C 5597, 2011 WL 6097738, at *2 (N.D. Ill. Dec. 5, 2011) (finding that the only connection to the plaintiff's home district was the alleged infringing use of the defendants' websites within the forum); Glamorgan Coal Corp. v. Ratners Group, PLC, 854 F. Supp. 436, 437 (W.D. Va. 1993) (finding, in a securities suit, that, although the plaintiffs filed in their home district, the only connection to the forum was telephone and mail contacts from the plaintiff's representatives in Virginia to the defendants in New York) (emphasis added); Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1257 (E.D. Va. 1988) (noting, in an ERISA case, that the substantial deference due to the plaintiff's choice of forum was reduced "somewhat" where the only connection to the cause of action was "the administrative functions carried on by plaintiffs in determining defendant's liability, if any, to the benefit or pension plans," and where the workers were employed elsewhere, most of the work was performed elsewhere, and the collective bargaining agreement was negotiated or created elsewhere). As described previously, Trace-Wilco, 2009 WL 455432, at *2-3, did utilize the "preferred forum" approach to find that the plaintiff's choice of what basically amounted to its home forum should not be afforded deference, but this case's reasoning simply is not persuasive. See discussion supra n.9.

ordinarily centered in its home district, reliance upon the "center of gravity" rule here, carried to its logical conclusion, would so often divest a plaintiff of its choice of its home forum that the ordinary "home forum" rule would cease to have any substantial weight. Such an inversion of the "well-settled precepts for applying § 1404(a)" is simply not supported by the case law. See Heinz Kettler, 750 F. Supp. 2d at 668 n.8.

In sum, based on Plaintiff's active utilization of the technology protected by its patents, as well as the production and sale of products based on that technology, all in this District, Plaintiff possesses a significant, legitimate connection to the Eastern District of Virginia, which serves to meaningfully connect the underlying causes of action to this forum. Accordingly, the Court **FINDS** that Plaintiff's choice of its home forum must be afforded substantial weight, and that Plaintiff's choice strongly counsels against transfer.

### 2. Convenience of the Parties

"[C]onvenience to the parties . . . typically requires courts to consider factors such as the 'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" Heinz Kettler, 750 F. Supp. 2d at 668 (quoting Lycos, 499 F. Supp. 2d at 693). Moreover, courts in this District have noted that "[w]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." Id. (quoting JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007)); see also Bd. of Trs., 702 F. Supp. at 1259. In fact, "even though a defendant may be inconvenienced by litigating an action in a plaintiff's home district, a transfer is not appropriate where it would likely only serve to 'shift the balance of inconvenience' from the plaintiff to the defendant." JTH Tax, 482 F. Supp. 2d at 738 (internal citations omitted); see also Heinz Kettler, 750 F. Supp. 2d at 668; Prod. Group, Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004).

Here, all of Defendants' headquarters are located in New York City, New York, along with the vast majority of their employees with knowledge of the development, implementation, and operation of the allegedly infringing products. Thus, considering that, "in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," In re Genetech, Inc., 556 F.3d 1338, 1345 (Fed. Cir. 2009), much relevant evidence will likely be found in New York. Further, as one of the eight patents-in-suit appears to have been developed in New York, information regarding that patent's conception and initial reduction to practice, as well as its filing and prosecution, is likely to be found in New York.[11]

Nevertheless, evidence likely will also be located in Virginia, based on Plaintiff's strong presence and development of technology protected by the patents at issue here. See Heinz Kettler, 750 F. Supp. 2d at 668 (noting that the proposed transferee forum was inconvenient for the plaintiff because the plaintiff's "principal place of business, employees, and relevant documents are located in Virginia"). Indeed, Plaintiff specifically avers that all of its employees with knowledge concerning relevant products, damages, the validity of the patents-in-suit, and related lawsuits, and all of the documents associated therewith, are located in the Eastern District of Virginia. Doc. 23 at 7-8.

Consequently, each party holds potential party witnesses and relevant documents in their respective proposed forum, and although it is probable that more relevant evidence will be present in New York than in Virginia, such a huge divide does not exist that transferring this case to the Southern District of New York would accomplish much more than merely shifting the balance of inconvenience from Defendants to Plaintiff. See VS Techs., 2:11cv43, slip op. at 13-14 ("[I]t is probable that more relevant evidence is and more party witnesses are located in the

---

[11] As the other seven patents-in-suit appear to have been developed in Texas, the ease of obtaining such information with respect to them is neutral and favors neither proposed forum.

Northern District of California. However, transfer is inappropriate where it robs a plaintiff of his chosen forum and merely shifts the balance of inconvenience from defendant to plaintiff.") (citing Bd. of Trs., 702 F. Supp. at 1258-59).[12] Accordingly, as is generally the case when the plaintiff files suit in its home forum, the Court **FINDS** that convenience to the parties, here, does not overcome the substantial weight accorded the Plaintiff's choice of forum. See Heinz Kettler, 750 F. Supp. 2d at 668 (quoting JTH Tax, 482 F. Supp. 2d at 738).

### 3. Convenience of Witnesses

"The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)." Samsung Elecs. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). Yet ordinarily, "a distinction is drawn between party and non-party witnesses," and while party witnesses "are presumed to be more willing to testify in a different forum . . . there is no such presumption as to non-party witnesses." Id. (internal citations omitted). As such, "[t]he convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue." Id. (citing Koh, 250 F. Supp. 2d at 637).

Nevertheless, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to

---

[12] Defendants argue that because the alleged infringing products are "live-in" products requiring constant day-to-day maintenance and enhancement, litigating this case in the Eastern District of Virginia would be extremely disruptive to their business. See, e.g., Doc. 18 at 8. However, Defendants have not alleged sufficient facts to allow the Court to conclude that the disruption to Defendants' business would be so much greater than the normal disruption in business caused by litigation, and thus, any potential disruption to their business does not weigh in favor of transfer. See Intranexus v. Siemens Med. Solutions Health Serv., Corp., 227 F. Supp. 2d 581, 584-85 (E.D. Va. 2002) (finding that the disruption of business caused by requiring presence in a foreign forum, alone, did not weigh for or against transfer, even where the plaintiff was a small business, owned and operated by a single individual, as "presence in any court makes disruption of business an inevitable occurrence"); Bd. of Trs., 702 F. Supp. at 1260-61 ("To be sure, defendant's costs will likely increase by having to defend the suit in Virginia. But defendant has not demonstrated that it is so small and so lacking in resources that the interest of justice require[s] transfer to Indiana."). C.f. Green Jets, Inc., No. 2:10cv421, slip op. at 10 (finding that convenience favored the defendant where defendant was a very small business with only three employees and if defendant and his employees had to be away from their business, defendant would have difficulty continuing its day-to-day business).

enable the court to assess the materiality of evidence and the degree of inconvenience." Id.

(citing Koh, 250 F. Supp. 2d at 636); see also Bd. of Trs., 702 F. Supp. at 1257. Although "it is

permissible to infer, absent any contrary evidence from the non-movant, that witnesses [who] are

located at or near the center of the allegedly infringing activities and that [are] involved in the

design and manufacture of the accused products are material," Koh, 250 F. Supp. 2d at 636-37,

"merely stating potential witnesses reside beyond a forum's subpoena power does little to assist

the court in weighing the convenience of the witness and the necessity of compulsory process."

Samsung, 386 F. Supp. 2d at 719. Indeed, "the moving party must demonstrate whether that

witness is willing to travel to a foreign jurisdiction," and "when the appearance of witnesses can

be secured regardless of the forum's location through court order or persuasion by an employer

who is a party to the action, this factor becomes less important." Id. (internal citations omitted).

Moreover, "[w]itness convenience is not merely a battle of numbers favoring the party

that can provide the longest list of witnesses that it plans to call," and "greater weight should be

accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility

is also likely to be an important issue." Id. at 718-19 (internal citations omitted). Additionally,

"[s]omewhat less weight is given to witness inconvenience when a party is unable to demonstrate

with any particularity that videotaped deposition testimony will be inadequate, and that live

testimony is critical." Id. at 719 (citing Koh, 250 F. Supp. 2d at 637; Acterna, 129 F. Supp. 2d at

939). "[L]oss of live testimony of less central witnesses is not so great a price for honoring

plaintiff's choice." Id. (internal citations omitted).

Turning to the facts of this case, first, with respect to party witnesses, no party has shown

that its witnesses, in fact, would not travel to this District, if the parties requested them to do so

and paid their expenses. As such, the convenience of party witnesses does not weigh for or

against transfer. See id.; see also Heinz Kettler, 750 F. Supp. 2d at 669 ("The inconvenience to

these witnesses, all of whom are either Razor's employees, related to Razor's employees, or

Razor's paid consultants, merits little weight in the transfer analysis because Razor has failed to

show that compulsory process is needed to obtain their testimony.").

      With respect to non-party witnesses, four of the named inventors of the '680 patent, along

with an attorney who was allegedly involved with certain inequitable conduct arising out of the

prosecution of the patent, reside within the subpoena power of the Southern District of New

York. Therefore, as "[m]any of the claims and defenses that arise in patent infringement

lawsuits, such as inequitable conduct and validity, require the testimony of the inventors, the

lawyers who filed the patent applications, and the owners of the intellectual property while the

patent applications were pending," Pragmatus AV, 769 F. Supp.2d at 996, the testimony of these

individuals is likely to be relevant and material, if not central to this action. Additionally,

Plaintiff has not identified a single non-party witness located in the Eastern District of Virginia

or for whom the Eastern District of Virginia is more convenient than the Southern District of

New York. As such, the presence of a number of important non-party witnesses within the

subpoena power of the Southern District of New York, and the absence of the same within this

District, causes this factor to weigh in favor of transfer.[13]

      However, this factor cannot be afforded the weight to which it would otherwise be

entitled, as the sole inventor of seven of the eight patents-in-suit does not reside within the

subpoena power of the Southern District of New York. Indeed, while transfer to the Southern

---

[13] Although Defendants also argue that convenience to third-party Nielsen weighs in favor of transfer, this argument is much less compelling. Nielsen was not the original inventor, nor even the first transferee of most of the patents-in-suit. See Doc. 18, Att. 3 (noting that many of the patents-in-suit were first transferred to Pacific Web, Inc., also known as Nuweb, a California based company). In fact, Nielsen is in much the same position as Plaintiff is here, a company who possessed the patents-in-suit for a time, developed the technology protected by the patents, and sued to enforce its patent rights, and thus, whatever information Nielsen possesses is likely to be cumulative of that possessed by Plaintiff. As such, video-taped depositions should be sufficient to present any necessary testimony from Nielsen at trial. See Samsung, 386 F. Supp. 2d at 719.

District of New York might cure the problems caused by the lack of live testimony with respect to one of the eight patents-in-suit, it would do nothing whatsoever to address any problems associated with acquiring testimony on the other seven patents at issue. What is more, Defendants have not made any showing that the testimony of all of the multiple inventors and lawyers identified would be necessary, or not cumulative, further reducing the weight to be afforded to their convenience. See Bd. of Trs., 702 F. Supp. at 1259 ("Nor is there any persuasive showing that all six supervisors would be needed. There is no detailed description of the supervisors' testimony and no convincing showing that the supervisors' testimony would be probative."). Although Defendants do allege that a jury should have the opportunity to weigh the credibility of the non-party witnesses identified, Defendants have not demonstrated that "videotaped deposition testimony [would] be inadequate" for their defense. See Samsung, 386 F. Supp. 2d at 719.

Further, Defendants have failed to make any showing that the non-party witnesses residing in New York would be unwilling to travel to the Eastern District of Virginia to testify, absent the Court's compulsory process. See id.; see also Schrader-Bridgeport, 2012 WL 503602, at *6 (holding, where Defendant claimed, without support, that certain important witnesses might not be willing to travel to the district in question to testify, that the defendant's "unsupported suppositions" were not sufficient under the case law and that "[t]his factor – which, with proper support, would weigh heavily in Defendant's favor – is therefore neutralized").[14]

Consequently, the Court **FINDS** that, although this factor weighs in favor of transfer, the full weight that might otherwise be accorded it is muted, both by the absence of the inventor of

[14] Double Verify argues that it would "strain credulity" to believe that these third party witnesses would be willing to come to Virginia, absent compulsory process, considering that Defendants intend on attacking the patents that they helped create. However, this is just the type of "unsupported supposition" that the court found inadequate in Schrader-Bridgeport, and, absent any facts to support it, the Court will not grant such speculation significant weight here.

19

seven of the eight parents-in-suit from the proposed transferee forum and by Defendants' failure to sufficiently establish that the non-party witnesses identified would be unwilling to testify in Virginia, absent this Court's compulsory process.

*4. The Interest of Justice*

In evaluating whether the interest of justice weighs in favor of transfer, the Court looks to "the public interest factors aimed at systemic integrity and fairness." Heinz Kettler, 750 F. Supp. 2d at 669-70 (quoting Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." Id. Similarly, "[f]airness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Id.

Here, an assessment of these factors, as a whole, weighs neither for nor against transfer. Turning first to those factors weighing against transfer, as Plaintiff is a local business with strong ties to the Eastern District of Virginia, this District "has an interest in providing a forum for its residents to litigate their disputes." Id. at 670 (holding that the interest of justice weighed in favor of keeping the case in this District based, in part, on the plaintiff's strong ties to the District). Consequently, this factor weighs against transfer.

Additionally, this District resolves civil cases, including patent cases, more quickly than does the Southern District of New York. See, e.g., Doc. 23, Att. 1, at 12-13.[15] However, "the speed of a district's docket is not decisive, and a comparison of docket conditions yields only slight weight for or against transfer in a §1404(a) analysis." VS Techs., No. 2:11cv43, slip op. at

---

[15] The Court may take judicial notice of statistical information available through the Administrative Office of United States Courts, as well as the USPTO. See Fed. R. Evid. 201(b)(2).

20

12; see also Cognitronics Imaging Sys., 83 F. Supp. 2d at 699 ("The 'rocket docket' certainly

attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the

Court to continue to act in an expeditious manner."). Further, docket congestion is neutral in this

case. In 2011, the Southern District of New York received 343 new civil cases and 36 new

criminal felony cases per judgeship while the Eastern District of Virginia received 311 new civil

cases and 105 new felony criminal cases per judgeship, indicating that these two districts have

relatively equal dockets. See Doc. 23, Att. 1, at 12-13. Thus, docket conditions, while weighing

slightly against transfer, are not entitled to substantial weight.[16]

In contrast, it is likely that a resolution of Moat's counterclaims will involve New York

law, and therefore, this factor weighs in favor of transfer, but again, only slightly, considering all

other factors at issue. See Cognitronics Imaging Sys., 83 F. Supp. 2d at 699 (holding that

plaintiff's state law conspiracy claims could not be a determinative factor in resolving the motion

to transfer, considering all other factors) (citing Gen. Foam Plastics Corp. v. Kraemer Exp.

Corp., 806 F. Supp. 88, 90 (E.D. Va. 1992) ("Although preferable to have a case involving state

law issues decided by a court familiar with the substantive law applicable, 'the choice of law

factor is not controlling.'")).

The rest of the factors in this case are neutral and do not weigh for or against transfer.

First, with respect to judicial economy, the only current cases involving the patents-in-suit of

which the Court has been made aware have been consolidated before this Court, and thus shall

be kept or transferred together. As such, this factor does not weigh for or against transfer.

Second, with respect to previous litigation involving some or all of the patents-in-suit,

both the Eastern District of Virginia and the Southern District of New York have familiarity with

them. On one hand, two cases involving the patents at issue have previously been litigated in the

---

[16] Raw numbers as to docket speed and congestion do not necessarily tell the whole story.

Eastern District of Virginia. Nielsen previously litigated a case against Plaintiff in this District, wherein the court considered and denied the defendant's motion to dismiss. Nielsen Co. (US), LLC v. comScore, Inc., No. 2:11cv168 (E.D. Va.) (filed Mar. 15, 2011) (Davis, J.) (Doc. 56). Another case involving the patents at issue was also litigated here, although it settled after a motion to dismiss was briefed, but before it was decided. Netratings, Inc. v. Visual Scis., LLC, No. 2:05cv349 (E.D. Va.) (filed June 9, 2005) (Smith, J.).

On the other hand, the Southern District of New York has handled five cases involving some of these patents. Two of the cases were settled during discovery and prior to claim construction, two were settled during claim construction but before the Markman hearing, and one was settled after the Markman hearing. No court issued a Markman Order. Doc. 18, Att. 2 (citing Netratings, Inc. v. 180Solutions, Inc., No. 1:06-cv-3353 (S.D.N.Y Sept. 14, 2011); Netratings, Inc. v. Tacoda, Inc., No. 1:06-cv-8186 (S.D.N.Y Dec. 10, 2008); Netratings, Inc. v. WHENU.com, Inc., No. 1:06-cv-3556 (S.D.N.Y Jan. 7, 2008); Netratings, Inc. v. Websidestory, Inc., No. 1:06-cv-878 (S.D.N.Y Aug. 27, 2007); Netratings, Inc. v. Sane Solutions, LLC, No. 1:05-cv-5076 (S.D.N.Y July 5, 2006)). These cases each involved several discovery motions, but no motions to dismiss or motions for summary judgment. Id. Consequently, neither this Court nor the proposed transferee forum is significantly more familiar with these patents, and judicial economy is equally well-served by either forum.

Finally, the remaining factors are not relevant to this case. Patent disputes are not a local controversy that could be said to unfairly burden jurors in any jurisdiction. See Lycos, Inc., 499 F. Supp. 2d at 696. And similarly, all federal courts are presumed to be equally knowledgeable regarding matters of federal law. Byerson, 467 F. Supp. 2d at 635 (citing 15 Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 at 469); see also BHP Int'l Inv.,

22

Inc. v. Online Exch., Inc., 105 F. Supp. 2d. 493, 498 (E.D. Va. 2000) (specifying that this factor is limited to diversity cases, which involve the application of state law).

Accordingly, the Court **FINDS**, after weighing all of these factors, that the interests of justice preponderate neither for nor against transfer.

### 5. Weighing the Factors

On balance, the relevant factors do not weigh strongly in favor of transfer, and as such, Defendants have failed to meet their burden.  Based on Plaintiff's active utilization of the technology protected by its patents, and its production and sale of products based on that technology, all in this District, Plaintiff possesses a significant, legitimate connection to the Eastern District of Virginia, which justifies affording Plaintiff's choice of forum substantial weight, and strongly counsels against transfer.

It is true that the "center of gravity" of these cases clearly lies within the Southern District of New York.  Yet, considering the absence of the sole inventor of seven of the eight patents-in-suit from that forum and the fact that Defendants have failed to demonstrate that the non-party witnesses identified would be unwilling to testify absent this Court's compulsory process, this factor, without more, cannot overcome the deference owed to Plaintiff's choice of its home forum.  See Bd. of Trs., 702 F. Supp. at 1259 ("The Virginia forum plainly presents more inconvenience to defendant's witnesses . . . . Defendant, however, has not persuaded this Court that the inconvenience to its witnesses rises to the level required to warrant transfer to Indiana.").

Although Defendants' arguments are reasonable and well-stated, nothing else tips the scales sufficiently in Defendants' favor.  Indeed, an analysis of the parties' convenience reveals that transferring this case on that basis would do little more than shift the balance of

inconveniences from Defendants to Plaintiff.  Likewise, nothing in the record suggests that the

interest of justice significantly militates in favor of transfer.  Consequently, the Court **FINDS**

that Defendants have failed to satisfy their burden of demonstrating that the facts and

circumstances present here weigh strongly in favor of transfer.

### III.  CONCLUSION

For the reasons stated herein and at the January 24, 2013, hearing, and after an analysis of

the relevant § 1404(a) factors, the Court **FINDS** that Defendants have not met their burden of

proving that transfer is warranted.  Accordingly, the Court hereby **DENIES** each of Defendants'

three Motions to Transfer Venue.  Docs. 17 (2:12cv351), 27 (2:12cv396), 28 (2:12cv695).

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.


_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
Date: February 14, 2013

24