IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



**COMSCORE, INC.,**

      Plaintiff and Counterclaim Defendant,

v.                                                                Civil Action No. 2:12cv351

**MOAT, INC.,**

      Defendant and Counterclaim Plaintiff.

## ORDER AND OPINION

On June 10th and 11th, 2013, the Court conducted a <u>Markman</u> hearing for the purposes of construing twenty-two (22) terms in the Plaintiff's patent at issue, and five (5) terms in the Counterclaim Plaintiff's patent at issue. After careful consideration of the parties' briefs, oral argument, and visual presentations in support thereof, the Court ruled from the bench and hereby issues this Order and Opinion detailing the Court's claim construction.

### I.    Factual Background and Procedural History[1]

**A. Factual Background**

There are eight (8) patents at issue in the instant action (the "patents-in-suit"), seven (7) that are asserted by Plaintiff and Counterclaim Defendant comScore, Inc. ("Plaintiff," "Counterclaim Defendant," or "comScore), and one (1) that is asserted by Defendant and Counterclaim Plaintiff Moat, Inc. ("Defendant," "Counterclaim Plaintiff," or "Moat").[2]

---

[1] This section details only those aspects of the facts and procedural history relevant to the issues presently before the Court.
[2] The patents-in-suit asserted by comScore include U.S. Patent No. 6,115,680 (the "'680 patent"); the Blumenau Family 1, which is comprised of: U.S. Patent Nos. 7,386,473 (the "'473 patent"), 7, 613,635 (the "'635 patent"), 7,716,326 (the "'326 patent"), 7,756,974 (the "'974 patent"); and the Blumenau Family 2, which is comprised of:

U.S. Patent No. 6,115,680 (the "'680 patent") was issued on September 5, 2000 and is titled "Computer Use Meter and Analyzer." The '680 patent generally describes and claims "a system for collecting, logging, and, and analyzing preselected operations in a personal computer and reporting use trends." '680 patent at 1:13-16. Essentially, the patent relates to monitoring what individuals do on their computers, and analyzing and reporting on the collected data. 2:12cv351, Doc. 91 at 5. According to Plaintiff, this is accomplished using software located on the client computer that captures data identifying the software applications and resources the user is accessing. Id.

The Blumenau Family 1 is a group of related patents that monitor the display and observation of web content, such as a web page or online advertisement, at client computers. 2:12cv351, Doc. 91 at 12.[3] The invention described in the Blumenau Family 1 is a mechanism for enabling advertisers to monitor the display and observation of their advertisements that are disseminated over a computer network. 2:12cv351, Doc. 89 at 24.

The Blumenau Family 2 is a group of related patents that process web content using interfaces of a browser. Doc. 91 at 30.[4] This is achieved by installing software meters on computers so that the exposure of Internet content can be measured and extrapolated over the population as a whole. Doc. 89 at 39 (quoting '470 patent at 1:63-67). This metering is implemented using a number of methods, which are detailed in the parties' papers and the patents' specifications.

The '826 patent, entitled "Performance Optimizer System and Method," was issued on November 8, 2005. The '826 patent generally describes and claims a method for analyzing

---

U.S. Patent Nos. 6,327,619 (the "'619 patent") and 6,418,470 (the "'470 patent"). 2:12cv695, Doc. 1. Moat has asserted U.S. Patent No. 6,963,826 (the "'826 patent"). 2:12cv695, Doc. 8.
[3] The oldest patent in that family, U.S. Patent No. 6,108,637 ("'637" patent) was issued on August 22, 2000. Plaintiff has indicated (provisionally) that it does not intend to assert the '637 patent.
[4] The oldest patent in the family, the '619 patent, was issued on December 4, 2001.

2

information relating to the usage of technology. According to Moat, the method is performed by obtaining usage information related to a person's interaction with technology. Further, Moat notes, transactional information related to information collected by the technology is provided as well. The method then aggregates and/or segments the usage information and/or the transactional information before applying a statistical methodology to obtain statistical analysis information. 2:12cv351, Doc. 87 at 4.

## B. Procedural History

On July 20, 2012, comScore filed its Complaint alleging infringement of the patents-in-suit. 2:12cv695, Doc. 1. Moat filed its Answer and Counterclaim on September 20, 2012. 2:12cv695, Doc. 8. On December 12, 2012, the case was reassigned to this Court, and on December 20, 2012, was consolidated with two other similar cases. 2:12cv695, Doc. 42.[5]

On January 30, 2013, the Court ordered the parties to submit their joint claim construction statement by May 13, 2013, and that, if the Court determines a Markman hearing is necessary, such a hearing would be held on June 10, 2013. Docs. 37, 38. On March 25, 2013, Defendants filed a Joint Motion to Limit the Number of Claims Asserted by Plaintiff, which was fully briefed and referred to the Court for review on April 12, 2013. Docs. 54-56, 61-62, 67-68.[6] The parties filed their Joint Statement on Claim Construction, Doc. 79, on May 13, 2013. On May 17, 2013, the parties filed a Joint Motion for Leave to File Excess Pages for Claim Construction Brief. Doc. 80. On May 21, 2013, the Court issued an Order granting the parties leave to file excess pages and scheduling a Markman hearing on June 10, 2013. Doc. 82. The

---

[5] Future citations to the docket will refer exclusively to the docket in 2:12cv351.
[6] On June 11, 2013, at the close of the Markman hearing, the Court directed the parties to narrow the number of patents and claims that will be asserted at trial. Doc. 105. The Court suggested that the Plaintiff might identify a single representative patent for each category of invention being asserted. The parties were further directed to submit their proposed list of patents and claims being asserted for trial to the Court by July 11, 2013. Upon receipt of said submissions, the Court will review them, with an eye towards identifying further opportunities to narrow the number of patents and claims being asserted, if necessary. The Court will then issue an Order ruling on Defendants' Joint Motion to Limit the Number of Claims Asserted by Plaintiff. 2:12cv351, Doc. 54.

parties filed their respective Opening Briefs on Claim Construction and supporting documents on May 24, 2013. Docs. 85-97. The parties' Responsive Briefs were filed on June 3, 2013. Docs. 99-103. The Court conducted a Markman hearing on June 10-11, 2013.

## II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

### C. General Principles

The purpose of a Markman hearing is to assist the Court in construing the meaning of the patent(s) at issue. Markman v. Westview Instruments, Inc., 517 U.S. 370, 371 (1996); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). Patents consist of "claims," and the construction of those claims "is a question of law, to be determined by the court." Markman, 517 U.S. at 371; Markman, 52 F.3d at 970–71. A court need only construe, however, claims "that are in controversy, and only to the extent necessary to resolve the controversy." Vivid Techs., Inc. v. Am. Science Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) (citations omitted). To be clear, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1311 (Fed. Cir. 2005) (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

Claim construction begins with the words of the claims. Vitronics Corp. v. Conceptromc, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves . . . ."). Words in a claim are generally given their ordinary meaning as understood by a person of ordinary skill in the art. Id. This "person of ordinary skill in the art is deemed to read the claim term not only in the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips v. AWH Corp., 415 F.3d 1303, 1313

(Fed. Cir. 2005) (en banc). "In some cases, . . . the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words." Id. at 1314. Often, however, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claims language to mean." Id.

Further, the claims themselves can provide substantial guidance as to the meaning of particular claim terms. Id. First, "the context in which a term is used within a claim can be highly instructive." Id. In addition, other claims of the patent in question, both asserted and unasserted, can also be useful because claim terms are "normally used consistently throughout the patent," and therefore "can often illuminate the meaning of the same term in other claims." Id.

The claims should not be read alone, however, but rather should be considered within the context of the specification of which they are a part. Markman, 52 F.3d at 978. As the Federal Circuit stated in Vitronics and restated in Phillips, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips, 415 F.3d at 1315. In addition to consulting the specification, a court may also consider the patent's prosecution history, if in evidence, because it provides information regarding how the United States Patent and Trademark Office and the inventor understood the patent. See id. at 1317.

These elements of the patent itself—the claims, the specification, and its prosecution history—constitute intrinsic evidence of claim construction. In addition to such intrinsic evidence, a court may consider extrinsic evidence to determine the meaning of disputed claims. Phillips, 415 F.3d at 1317. Such extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (citing Markman, 52 F.3d at 980).

Such extrinsic evidence, however, is generally held as less reliable than the intrinsic evidence, and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of intrinsic evidence." Id. at 1317–18. With respect to expert evidence, for example, "[c]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court . . . [and] a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." Id. at 1318.

With respect to general usage dictionaries, the Federal Circuit noted that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used . . . in claim construction," and further noted that "a dictionary definition has the value of being an unbiased source 'accessible to the public in advance of litigation.'" Id. at 1322 (citing Vitronics, 90 F.3d at 1585). However, the Federal Circuit cautions that (1) "'a general-usage dictionary cannot overcome art-specific evidence of the meaning' of a claim term;" (2) "the use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent," and (3) that "[t]here is no guarantee that a term is used in the same way in a treatise as it would be by the patentee."

Phillips, 415 F.3d 1322 (quoting Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n, 366 F.3d 1311, 1321 (Fed. Cir. 2004)).[7] Indeed, "different dictionary definitions may contain somewhat different sets of definitions for the same words. A claim should not rise or fall based upon the preferences of a particular dictionary editor, . . . uninformed by the specification, to rely on one dictionary rather than another." Id.

**D. The "Canons of Claim Construction"**

The Federal Circuit has recognized certain guideposts, or "canons of construction," to assist a court in determining the meaning of disputed claim terms and phrases. These are merely guideposts, however, and are not immutable rules:[8]

1. Doctrine of Claim Differentiation: Ordinarily, each claim in a patent has a different scope. See, e.g., Versa Corp. v. Ag-Bag Int't Ltd., 392 F.3d 1325, 1330 (Fed. Cir. 2004). Ordinarily, a dependent claim has a narrower scope than the claim from which it depends. See, e.g., Phillips, 415 F.3d at 1315. Ordinarily, an independent claim has a broader scope than a claim that depends from it. See, e.g., Free Motion Fitness, Inc. v. Cybex, In't, Inc., 423 F.3d 1343, 1351 (Fed. Cir. 2005).

2. Ordinarily, claims are not limited to the preferred embodiment disclosed in the specification. See, e.g., Phillips, 415 F.3d at 1323.

3. Ordinarily, different words in a patent have different meanings. See, e.g., Innova/Pure Water, Inc., 381 F.3d at 1119–20.

4. Ordinarily, the same word in a patent has the same meaning. See, e.g., Phillips, 415 F.3d at 1314.

---

[7] In Phillips, the Federal Circuit thus expressly discounted the approach taken in Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F. 3d 1193 (Fed. Cir. 2002), in which the court placed greater emphasis on dictionary definitions of claim terms. Phillips, 415 F.3d at 1319–24 ("Although the concern expressed by the court in Texas Digital was valid, the methodology it adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic sources, in particular the specification and prosecution history."). The Federal Circuit reaffirmed the approach in Vitronics, Markman, and Innova as the proper approach for district courts to follow in claim construction, but acknowledged that there was "no magic formula" for claim construction, and that a court is not "barred from considering any particular sources . . . as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips, 415 F.3d at 1324.

[8] This list is derived from the one provided in the FEDERAL JUDICIAL CENTER, PATENT LAW AND PRACTICE, § 5.I.A.3.d (5th ed. 2006).

5. Ordinarily, the meaning should align with the purpose of the patented invention. See, e.g., Innovad Inc. v. Microsoft Corp., 260 F.3d 1326, 1332–33 (Fed. Cir. 2001).

6. Ordinarily, general descriptive terms are given their full meaning. See, e.g., Innova/Pure Water, Inc., 381 F.3d at 1118.

7. If possible, claims should be construed so as to preserve their validity. See, e.g., Energizer Holdings, Inc. v. International Trade Comm'n, 435 F.3d 1366 (Fed. Cir. 2006).

8. Ordinarily, absent broadening language, numerical ranges are construed exactly as written. See, e.g., Jeneric/Pentron v. Dillon Co., 205 F.3d 1377, 1381 (Fed. Cir. 2000).

9. Ordinarily, absent recitation of order, steps of a method are not construed to have a particular order. See, e.g., Combined Sys., Inc. v. Def. Tech. Corp. of Am., 350 F.3d 1207, 1211–12 (Fed. Cir. 2003).

10. Absent highly persuasive evidentiary support, a construction should literally read on the preferred embodiment. See, e.g., Cytologix Corp. v. Ventana Medical Sys., Inc., 414 F.3d 1168, 1175 (Fed. Cir. 2005).

### III. AGREED TERMS

The parties have reached agreement on the following terms and accompanying constructions:

1. *content provider site:* a device that is part of the network and that can provide content to another device that is part of the network

2. *content display site:* a device that is part of the network and that can receive and display content from another device that is part of the network

3. *content provider server:* a server that is part of the network and that can provide content to another device that is part of the network

4. *content:* any sensory images (or data used to produce those sensory images) displayed by a device

5. *a content provider with an assigned account number:* a content provider to which an account number has been assigned

6. *to cause/that causes/causes:* to produce a specific result/that produces a specific result/produces a specific result

7. *causing display of the content to be detected:* producing the specific result of detecting whether the content is presented on the display screen

8. *cause detection of display of content associated with the content file*: produce the specific result of detecting whether the content associated with the content file is presented on the display screen

9. *causes display of content associated with the content file to be detected*: produces the specific result of detecting whether the content associated with the content file is presented on the display screen

10. *causes display of the content associated with the file to be detected*: produces the specific result of detecting whether the content associated with the file is presented on the display screen

11. *determining . . . displayed*: determining . . . actually presented on a display screen. Doc. 79 at 3

## IV. DISPUTED TERMS AND CLAIM CONSTRUCTIONS

The parties dispute the following terms, contained in the '680 patent, Blumenau Family 1, Blumenau Family 2, and the '826 patent, respectively. For brevity's sake, the Court has not recounted the parties' arguments or the reasons for the Court's findings. The parties' positions on the construction of the terms at issue are set forth in their respective briefs. See Docs. 85, 87, 89, 91, 99, 101, 102, 103. The Court's reasons for its findings are stated in the record.

### A. The '680 Patent

The '680 patent has five (5) disputed claim terms, "local computer use meter," "installed in user computer machines," "log," "predetermined events," and "said log of predetermined events identifies character strings reflecting on-line activity." The disputed claim terms appear in claims one (1) and twelve (12) of the '680 patent.

#### 1. *"local computer use meter/ user meter"*

The Court **ORDERS** that the proper construction of the term "**local computer use meter/user meter**" is "**a software program installed in user computer machines, designed to collect information regarding the use of other software programs.**"

### 2. *"installed in user computer machines"*

Here, the parties' dispute centered on the meaning of the word "installed."[9] The Court **FINDS** that the meaning of the word "installed" is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **installed in user computers**. Vitronics, 90 F.3d at 1582.

### 3. *"log"*

The Court **ORDERS** that the proper construction of the term **"log"** is **"a record."**

### 4. *"predetermined events"*

The Court will determine the proper construction of the term **"predetermined events"** at the final pre-trial conference, after deciding the appropriate construction of the claim term, "said log of predetermined events identifies character strings reflecting on-line activity."

### 5. *"said log of predetermined events identifies character strings reflecting on-line activity"*

Consistent with its construction of the terms **"log"** and **"predetermined events"** the Court **ORDERS** that the proper construction of the term **"said log of predetermined events identifies character strings reflecting online activity"** is either **"wherein a record of operating system messages of types specified before recording begins which are identified by character strings reflecting online activity,"** or **"wherein a list of occurrences or actions which meet the definition of 'predetermined events' and are identified by character strings reflecting online activity."** The Court will select one of these two definitions at the final pre-trial conference.

---

[9] See Doc. 91 at 7, Doc. 89 at 14-15, Doc. 79 at 7-9

## B. Blumenau Family 1

The Blumenau Family 1 group of patents contains six (6) disputed claim terms, "file," "computer executable . . . instruction/computer executable . . . function," "event notification passed from a host environment," "receives the at least one monitoring function as part of receiving the content file," "B 'is referenced by' A / A 'references' B," and "located in/in/contains/containing/including."

### 6. *"file"*

The Court **ORDERS** that the proper construction of the term **"file"** is **"a named collection of information stored as an apparent unit."**

### 7. *"computer executable . . . instruction/computer executable . . . function"*

The Court **ORDERS** that the proper construction of the term **"computer executable . . . instruction/ computer executable . . . function"** is **"information specifying one or more steps to be performed by a computer's processor."**

### 8. *"event notification passed from a host environment"*

The Court has taken the parties proposed constructions and argument under advisement and will reserve ruling upon the proper construction of "event notification passed from a host environment," if this terms needs construction.

### 9. *"receives the at least one monitoring function as part of receiving the content file"*

The parties' dispute on the meaning of this claim term centered on the meaning of the phrase "as part of."[10] The Court **FINDS** that the meaning of the phrase "as part of" is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **receives the at least one monitoring function as part of receiving the content file.** Vitronics, 90 F.3d at 1582.

---

[10] See Doc. 91 at 17-18; Doc. 89 at 38; Doc. 79 at 97-99.

### 10. *"B 'is referenced by' A / A 'references' B"*

The Court **ORDERS** that the proper construction of the terms **"B 'is referenced by' A/ A 'references' B"** is **"A identifies a location from which B may be retrieved."**

### 11. *"located in/in/contains/containing/including"*

The Court **FINDS** that the meaning of the terms **"located in/in/contains/containing/including"** is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of these terms are as written in the claim: **located in/in/contains/containing/including**. Vitronics, 90 F.3d at 1582. The Court cautions, however, that each of these terms must be interpreted as the context of the claim requires.

### C. Blumenau Family 2

There are eleven (11) disputed terms in the Blumenau Family 2 group of patents, "object/objects," "list of objects," "obtaining a list of objects in the web content," "meta level of the program code/browser," "metering exposure of the listed objects ... metering the one object . . . ," "image," "contained in/in," "control," "inserting a reference to a control," "in order to process the web content," and "at least some of the listed objects."

### 12. *"object/objects"*

The Court **ORDERS** that the proper construction of the term **"object(s)"** is **"discrete item(s), including an image or a video, that can be individually selected and manipulated."**

### 13. *"list of objects"*

The Court **ORDERS** that the proper construction of the term **"list of objects"** is **"a list of more than one object."**

*14. "obtaining a list of objects in the web content"*

The parties' dispute focuses on the meaning of the word "obtaining."[11] The Court **FINDS** that the meaning of the word "obtaining" is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **obtaining a list of objects in the web content.** Vitronics, 90 F.3d at 1582.

*15. "meta-level of the program code/browser"*

The parties' dispute on the meaning of this claim term centered on the proper construction of the word "meta-level."[12] The Court adopted a construction that was derived from both parties' proposals, and **ORDERS** that the proper construction for the term **"meta-level"** as used in the terms **"meta-level of the program code"** and **"meta-level of the browser"** is **"code that permits access through interface with objects and methods of the software that implements its method so that functionality of that software can be extended or supplemented."**

> *16. "metering exposure of the listed objects, wherein step b) includes the following steps: determining whether one of the objects is an object of interest; and, metering the one object only if it is an object of interest."*

The Court ORDERS that the proper construction of the claim term containing the language **"metering exposure of the listed objects, wherein step b) includes the following steps: determining whether one of the objects is an object of interest; and, metering the one object only if it is an object of interest"** is **"determining whether one of the objects is an object of interest; and, metering the one object only if it is an object of interest."**

---

[11] See Doc. 91 at 36, Doc. 89 at 44; Doc. 79 at 113-15.
[12] See Doc. 91 at 30-32; Doc. 89 at 40; Doc. 79 at 104.

*17. "image"*

The Court **ORDERS** that the proper construction of the term **"image"** is **"an electronic representation in whole or in part of an object which may be in a static or video format."**

*18. "contained in/in"*

The Court **FINDS** that the meaning of the term **"contained in/in"** is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **contained in/in**. Vitronics, 90 F.3d at 1582. The Court cautions, however, that each of these terms must be interpreted as the context of the claim requires.

*19. "control"*

The Court **ORDERS** that the proper construction of the term **"control"** is **"an additional computer executable code that adds functionality to a computer program."**

*20. "inserting a reference to a control [in the received HTML/in HTML received by the computer]"*

The Court **ORDERS** that the proper construction of the term **"inserting a reference to a control [in the received HTML/in HTML received by the computer]"** is **"inserting data editing the HTML which identifies a location from which the control may be retrieved."**

*21. "in order to process the web content"*

The Court **ORDERS** that the proper construction of the term **"in order to process the web content"** is **"in order to process the metered data in accordance with the newly edited HTML."**

*22. "at least some of the listed objects"*

The Court **ORDERS** that the proper construction of the term **"at least some of the listed objects"** is **"two or more of the listed objects."**

**D. The '826 Patent (The Counterclaim)**

The '826 patent contains five (5) disputed terms: "transactional information," "usage information," "statistical methodology," "statistical analysis information," and "technology." All disputed terms appear in the claim 1 of the '826 patent.

*1. "transactional information"*

The Court **FINDS** that the meaning of the term **"transactional information"** is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **transactional information**. Vitronics, 90 F.3d at 1582.

*2. "usage information"*

The Court **FINDS** that the meaning of the term **"usage information"** is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **usage information**. Vitronics, 90 F.3d at 1582.

*3. "statistical methodology"*

The Court **ORDERS** that the proper construction of the term **"statistical methodology"** is **"mathematical concept."**

*4. "statistical analysis information"*

The Court **FINDS** that the meaning of the term **"statistical analysis information"** is plain to one of "ordinary skill in the art," and therefore **ORDERS** that the proper construction of the term is as written in the claim: **statistical analysis information**. Vitronics, 90 F.3d at 1582.

*5. "technology"*

The Court **ORDERS** that the proper construction of the term **"technology"** is **"any devices that are capable of sending or receiving data across a communication network."**

## V. CONCLUSION

For the reasons stated on the record, the Court issues this Order and Opinion delineating the Court's construction of twenty-seven (27) terms contained in the patents-in-suit for the above-captioned case and related counterclaim. For ease of reference, the disputed terms and the Court's constructions are listed below:

| # | Disputed Term | The Court's Construction |
|---|---|---|
| | **The '680 Patent** | |
| 1 | "local computer use meter" | a software program installed in user computer machines, designed to collect information regarding the use of other software programs |
| 2 | "installed in user computer machines" | The proper construction is as written in the claim. |
| 3 | "log" | a record |
| 4 | "predetermined events" | The Court will determine the proper construction of the term at the final pre-trial conference. |
| 5 | "said log of predetermined events identifies character strings reflecting on-line activity" | The Court will select one of the following constructions at the final pre-trial conference: (1) "wherein a record of operating system messages of types specified before recording begins which are identified by character strings reflecting online activity;" or (2) "wherein a list of occurrences or actions which meet the definition of 'predetermined events' and are identified by character strings reflecting online activity." |
| | **Blumenau Family 1** | |
| 6 | "file" | a named collection of information stored as an apparent unit |
| 7 | "computer executable . . . instruction/computer executable . . . function" | information specifying one or more steps to be performed by a computer's processor |
| 8 | "event notification passed from a host environment" | The Court has taken the parties' positions under advisement and will reserve ruling on the proper construction of this term, if the term needs construction. |
| 9 | "receives the at least one monitoring function as part of receiving the content file" | The proper construction is as written in the claim. |
| 10 | " B is referenced by A/A references B" | A identifies a location from which B may be retrieved |

| | | |
|---|---|---|
| 11 | "located in/in/contains/containing/including" | The proper construction is as written in the claim. The Court cautions, however, that the terms must be interpreted as the context of the claim requires. |
| | **Blumenau Family 2** | |
| 12 | "object/objects" | discrete item(s), including an image or a video, that can be individually selected and manipulated |
| 13 | "list of objects" | a list of more than one object |
| 14 | "obtaining a list of objects in the web content" | The proper construction is as written in the claim. |
| 15 | "meta-level of the program code/browser" | code that permits access through interface with objects and methods of the software that implements its method so that functionality of that software can be extended or supplemented. |
| 16 | "metering exposure of the listed objects, wherein step b) includes the following steps: determining whether one of the objects is an object of interest; and, metering the one object only if it is an object of interest." | b) determining whether one of the objects is an object of interest; and, metering the one object only if it is an object of interest. |
| 17 | "image" | an electronic representation in whole or in part of an object which may be in a static or video format |
| 18 | "contained in/in" | The proper construction is as written in the claim. The Court cautions, however, that the terms must be interpreted as the context of the claim requires. |
| 19 | "control" | an additional computer executable code that adds functionality to a computer program |
| 20 | "inserting a reference to a control [in the received HTML/in HTML received by the computer]" | inserting data editing the HTML which identifies a location from which the control may be retrieved |
| 21 | "in order to process the web content" | in order to process the metered data in accordance with the newly edited HTML |
| 22 | "at least some of the listed objects" | two or more of the listed objects |

| # | Disputed Term | The Court's Construction |
|---|---|---|
| | The '826 Patent (Counterclaim) | |
| 1 | "transactional information" | The proper construction is as written in the claim. |
| 2 | "usage information" | The proper construction is as written in the claim. |
| 3 | "statistical methodology" | mathematical concept |
| 4 | "statistical analysis information" | The proper construction is as written in the claim. |
| 5 | "technology" | any devices that are capable of sending or receiving data across a communication network. |

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: July 22, 2013